HARDY, Judge.
Plaintiff sues for wages, statutory penalties and attorney’s fees, together with damages for personal injuries. After trial there was judgment in favor of defendant rejecting plaintiff’s demands, from which this appeal is prosecuted.
The established facts show that plaintiff was discharged from his employment with the defendant corporation on Friday, May 18, 1951, and was informed by the defendant’s superintendent, Mr. J. D. Hempley, that he might return to the plant for the purpose of receiving his pay either the next day, Saturday, or on the following Monday, which was the regular payday. Plaintiff returned on Monday, May 21st, and Hemp-ley delivered to him two checks totaling $63.33, representing his week’s pay for wages earned and his vacation pay. Upon receiving the checks plaintiff was approached by another employee of defendant who requested or demanded that plaintiff turn over the checks to him for the purpose of liquidating a loan. The loan, which *524 is here concerned, had been extended' to plaintiff by a mutual savings club organized by the employees of the defendant corporation. Admittedly, defendant had no connection with nor control over the savings club, although it appears that its existence and operation was generally known to defendant’s company. Plaintiff refused the demand to turn over the checks and was then requested to step into the office of the shipping clerk which was located in the rear of the building, for the purpose of discussing the matter. Complying with this request plaintiff entered the office where he found a number, variously estimated by the witnesses as from four to eight, of the white members of the club, among them being the treasurer or bookkeeper of the organization. There followed a discussion of plaintiff’s obligation to the club and proposals of a compromise settlement. Plaintiff offered to pay $25.00 but the members of the club refused to accept less than the sum of $50.00. During the discussion, or we should say in the course of the ensuing argument, plaintiff was physically assaulted and sustained a fractured nose as the result of the attack. After the assault plaintiff endorsed the two checks and delivered them to the treasurer of the club. The joint stipulation of counsel for the parties litigant after trial admitted that two of the members of the savings club would have testified that the sum of $16.50 was returned to plaintiff, but that plaintiff would testify that he received nothing. This point, however, has no bearing upon the determination of the issues presented.
Plaintiff sues for visages at the rate of $33.94 per week from May 21, 1951, until paid, together with $500.00 attorney’s fees, under the provisions of LSA-R.S. 23:631 et seq. Plaintiff further claims damages for personal injuries in the total sum of $11,000.00.
It appears that there is no real dispute with respect to the pertinent facts, nor is there any disagreement with respect to the law. Plaintiff’s counsel concedes, in brief, that the employees of defendant were not acting in the course and scope of their employment at the time of the assault. Plaintiff bases his claims for recovery upon the contention that he was an invitee upon defendant’s premises and that defendant owed him the duty of talcing all reasonable care and precaution for the purpose of protecting him against bodily harm, that this duty was violated, by reason of which violation plaintiff is entitled to recovery.
Plaintiff’s position is clearly and vigorously set forth in the following quotation from brief of his counsel:
“Thus, this uncontradicted testimony shows that the members of this credit union, creditors of this plaintiff, made amicable demand for the payment, of its debt in the presence of the defendant’s superintendent. On this demand being refused plaintiff was invited to go and did go back in the office where there were a number of white men. Defendant’s superintendent says that he knew that they were trying to collect their money. The defendant’s superintendent knew that further and other measures were contemplated. He says that he did not know what these other measures might be, but certainly he knew or should have known, that they would be something more drastic than an amicable demand. As we understand the law where one person claims a thing of another and amicable demand is refused the forum for the settlement of the dispute is the Court and the superintendent knew these men were not going to .Court. He knew that some pressure would be exerted on plaintiff. This being true it is our. position that defendant’s superintendent knew that forcible collection methods were not only possible, but probable. It follows that he should have taken precautions to see that Griffin was allowed to leave defendant’s premises safely and in like good condition in which he came upon those premises. When the superintendent did not do this defendant became liable.
“The heart of the case is presented by the following statement made by the District Judge in his written opinion which appears on page 69 of the Transcript :
*525 “ ‘We do not see that he was called upon to inquire or to anticipate that any other than lawful methods would he resorted to. We hold that the superintendent was not guilty of any neglect under the circumstances.’
“The sole question in this case is whether Mr. Hempley was called upon to inquire or attempt to ascertain whether extra legal methods were contemplated in the collection of Griffin’s debt. Judge Galloway did not think such duty rested on Mr. Hempley. As above indicated we do think so. We say in leaving this point that where a lone negro is taken to a room by a number of white creditors whose number the testimony shows to be anywhere from four to eight, after amicable collection methods had failed, that a superintendent would be monumentally stupid if it did not occur to him that these white creditors might attempt to brow-beat or assault the negro.”
Conceding the force and sincerity of counsel’s argument, we are nonetheless inclined to the opinion that his conclusion is the result of a sort of reverse process of reasoning which begins with a fact or result and then proceeds to reach back into a chain of events in the effort to establish a reason or cause. In other words this case presents what appears to us to be a convincing illustration of the superiority of hindsight over foresight. It is well enough to argue that defendant’s superintendent, Hempley, should have assumed that the members of the club which was the creditor of plaintiff, contemplated physical violence, but this assumption can be predicated only upon and after the occurrence of the actual assault. We have searched the record in vain for any showing of the presence of any physical indication or manifestation that would within reason have warned Hempley that plaintiff would be subjected to any physical violence or other means of coercion or pressure in the attempt to collect the amount due the creditor organization. In the absence of any showing of this kind it is obvious that the charge of violation of the duty of reasonable care against Hempley has not been sustained. The argument that Hempley knew, or should have known, is not supported by the established facts.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.